**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ANTONIO SANTANA VARGAS, | CIVIL NO.: 15-1521 (JAG) |
| Plaintiff, | |
| v. | |
| SANTANDER FINANCIAL SERVICES, INC (FORMERLY KNOWN AS CREFISA, INC.); BANCO SANTANDER PUERTO RICO; JOHN DOE; JANE ROE; INSURANCE COMPANIES A, B, AND C | |
| Defendants. | |

**MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF**

**TO THE HONORABLE COURT:**

**COME NOW** defendants Santander Financial Services, Inc. ("Santander Financial" or "Company"), and Banco Santander Puerto Rico ("Banco Santander") (collectively referred to as "Defendants"), through the undersigned counsels, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(b), submit the present Memorandum of Law in Support of Defendants' Motion for Summary Judgment:[1]

## I.  INTRODUCTION

On May 5, 2015, Plaintiff, Antonio Santana Vargas ("Santana" or "Plaintiff"), filed the above-captioned Complaint against Defendants. (Docket No. 1). In essence, Plaintiff alleges that he was subjected to a hostile work environment, discriminated against and terminated because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, Puerto Rico Law No. 100 of June 30, 1959 ("Law No. 100"), P.R. Laws Ann. tit. 29 §§

---

[1] As required by Local Rule 56(b), Defendants have filed in a separate document a Statement of Uncontested Facts ("SUF").

146 *et seq.*, and wrongful discharge pursuant to Puerto Rico Law No. 80 of May 30, 1976 ("Law No. 80"), P.R. Laws Ann, tit. 29 §§ 185a *et seq.* Plaintiff also alleges violations of Sections 1, 8 and 16 of Article II of the Constitution of the Commonwealth of Puerto Rico and tort liability under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141-42.

Notwithstanding Plaintiff's claims, Santana was never discriminated against or terminated because of his age, much less was he subjected to a hostile work environment. At all times during Plaintiff's employment, Santana was provided with the necessary tools, support, and personnel to achieve his branch's established goals, he simply did not use them. For example, like all other Branch Managers, Santana was provided with a Commercial School where Managers receive training regarding all aspects of the business; he was provided with sales training; meetings were held between the Managers, their supervisors, and branch employees; credit bureau campaigns were done; promotional flyers were provided to be used by the branches in order to promote loans, sales, and mortgage campaigns, among other things. **See SUF Nos. 87-88**. As such, after several years of continued poor performance, repeated failure to comply with the business objectives established for his position as Branch Manager, despite the continuous support from his supervisors, on August 8, 2014, Santana was terminated from his employment with Santander Financial. **See SUF Nos. 28-88**.

Hence, it is evident that Santana's employment termination with Santander Financial was neither discriminatory nor unjust as it was due to his continued poor performance, repeated failure to meet the required quality of service and his failure to comply with the business objectives established for his position as Branch Manager for various years.

Consequently, summary judgment should be entered dismissing the instant case in its entirety under Fed. R. Civ. P. 56.

## II.       FACTUAL BACKGROUND

### A.       THE PARTIES

Co-defendant, Santander Financial is a for-profit corporation duly organized under the laws of Puerto Rico, providing financial services in Puerto Rico. It was an equal opportunity employer with over 500 employees. **See Statement of Uncontested Facts ("SUF"), No. 1.** Co-defendant, Banco Santander is a bank duly organized under the laws of Puerto Rico, providing banking and financial services in Puerto Rico. It is an equal opportunity employer, with approximately 1,500 employees. **See SUF No. 2.** Plaintiff, Santana, began working at Island Finance on June 30, 1986 **See SUF No. 3.** In 2006, Island Finance was acquired by Santander Financial and became a division of Santander Financial. **See SUF No. 4.** Upon Santander Financial's acquisition of Island Finance, Santana became an employee of Santander Financial effective March 1, 2006. **See SUF No. 5.**

### B.       PLAINTIFF'S DUTIES AND RESPONSIBILITIES

Since March 1, 2006 up to his termination, Santana held the position of Branch Manager at Santander Financial. **See SUF No. 6.** At the time of his employment termination, Santana was the Branch Manager of Island Finance's Utuado Branch. **See SUF No. 7.** As part of his duties and responsibilities as Branch Manager, he supervised the Branch's employees. **See SUF No. 11.** As such, Santana was responsible for ensuring that all of the Branch's employees complied with among other things, their position's duties and responsibilities as well as Santander Financial's rules and procedures. **See SUF No. 12-26**. Santana was also responsible for overseeing and meeting the Branch's achievement of sales and collection goals as established by Santander Financial. **See SUF No. 13-27.**

Motion for Summary Judgment...                                                                              4
Civil No. 15-1521(JAG)

### C.      PLAINTIFF'S DISCIPLINARY ACTIONS AND EVALUATIONS

On April 15, 2009, he received and signed a document titled "Memorandum" dated April 14, 2009, outlining his results as Manager of the Utuado Island Finance branch for the period of January to March, 2009. **See SUF No. 28.** The Memorandum stated that the Utuado Branch's results were not acceptable. It further stated that the results compromised his permanence of his managerial position in the Company, and that Santana was to review his managerial priorities, make necessary adjustments and develop a specific work plan for his branch for the remaining months of the year. **See SUF No. 29.** The Memorandum informs Plaintiff that if he needed help he could ask for it and that his supervisor at the time, Efraín Alicea, was at his disposal to help Plaintiff in this endeavor and work hand in hand to improve his execution and the results of his branch. **See SUF No. 30**.

On August 16, 2010, he received and signed a document titled "Memorandum" dated August 9, 2010, outlining his results as Manager of the Utuado Island Finance branch for the second trimester of 2010. **See SUF No. 31.** The Memorandum indicated the losses that the Utuado Branch was experiencing, and stated that every month of the year 2009 Plaintiff registered negative results in several operational areas as Manager of an Island Finance branch. The Memorandum further stated that said marginal results were not acceptable, and that they compromised his permanence of his managerial position in the Company. **See SUF No. 32.** Moreover, Plaintiff was required to review his managerial priorities, make the necessary adjustments and develop a specific work plan for his branch for the remaining months of the year. The Memorandum also stated that it constituted an Improvement Plan of ninety (90) days. **See SUF No. 33**. The Memorandum reiterated that his supervisor at the time, Efraín Alicea, was

at his disposal to assist Plaintiff in order to reach the expected results of his Branch. **See SUF No. 34**.

Plaintiff admits that he received a Performance Evaluation for the year 2011. According to Santander Financial's evaluation form, an employee's performance is measured using a qualitative scale from 1.0 being the lowest to 5.0 being the highest. **See SUF No. 35.** Santana's evaluation showed that his performance for the year 2011 was under the lower end of the scale since he obtained a result of 2.05, described as proximate ("próximo"). **See SUF No. 36.** Santana admits that he discussed his 2011 Performance Evaluation with his direct supervisor at the time, Mr. Waldemar Rivera Álvarez and admits he was in agreement with the evaluation. **See SUF Nos. 37-39.** Plaintiff admits that at no point during the discussion of his evaluation did he inform his supervisor that he did not agree with the evaluation. **See SUF No. 40.** Santana admits that in the "Employee Final Comments" section, he wrote the following: "All of my efforts will be focused on meeting better results in my store, not only with the development of the business but also the delinquencies and uncollectible accounts ("fallido")."[2] **See SUF No. 41.**

Plaintiff received a Performance Evaluation for the year 2012. According to Santander Financial's evaluation form, an employee's performance is measured using a qualitative scale from 1.0 being the lowest to 5.0 being the highest. **See SUF No. 42.** Santana's evaluation showed that his performance for the year 2012 was under the lower end of the scale since he obtained a result of 2.31, described as partial completion ("cumple parcialmente"). **See SUF No. 43**. Santana admits that he discussed his 2012 Performance Evaluation with his direct supervisor

---

[2] For purposes of this motion we are translating "fallidos" as uncollectible accounts. Pursuant to Barron's Dictionary of Finance and Investment Terms, an uncollectible account is a "[c]ustomer account that cannot be collected because of the customer's unwillingness or inability to pay. A business normally writes off such a receivable as worthless after several attempts at collecting the funds." John Downes & Jordan Elliot Goodman Dictionary of Finance and Investment Terms (7th ed. 2006). We note that Marianela Matos similarly describes "fallidos" as the possible customer portfolio that will be lost and has not potential of being collected. **See Matos' Deposition, Exhibit D of SUF, p. 146.**

at the time, Mr. Waldemar Rivera Álvarez. **See SUF No. 44.** Santana admits that pursuant to his 2012 Performance Evaluation, there were several areas in which he was required improvement. **See SUF No. 45.** Santana admits that some of those areas were: business – growth, business – sales, risks – delinquencies, and risks – uncollectible accounts ("fallidos"). **See SUF No. 46.**

Plaintiff received a Performance Evaluation for the year 2013. According to Santander Financial's evaluation form, an employee's performance is measured from 1 being the lowest to 5.0 being the highest. **See SUF No. 47.** Santana's evaluation showed that his performance for the year 2013 was under the lower end of the scale since he obtained a result of 2.39, described as a partial completion ("cumple parcialmente"). **See SUF No. 48.** Santana admits that pursuant to his 2013 Performance Evaluation in the Improvement Opportunity section it stated that he needed to work on team development in order to obtain results, and the sale of insurance policies and mortgage products. **See SUF No. 49.** Santana admits that he discussed the evaluation with his direct supervisor. **See SUF No. 50.** Santana also admits that he agreed with the evaluation and that at no point did he disagree with the same. **See SUF No. 51.** Santana admits that in the "Employee Final Comments" section he wrote the following: "I will continue fine-tuning my strategies to obtain better results, which in recent months I have seen more positive results starting with the product RES. I will always continue being positive and willing to continue improving the results." **See SUF No. 52.**

### D.    SANTANA'S JANUARY 2014 PIP

As result of Santana's performance during 2011, 2012 and 2013 and his repeated failure to comply with the objectives established for his position, in January 2014 he was placed in a final Performance Improvement Plan ("PIP"). **See SUF No. 53.** A PIP is a process established by the Company which provides employees who are not achieving their performance goals an

opportunity to raise their performance to the level that is expected by the Company. **See SUF No. 54**.

Plaintiff admits that on April 4, 2014, he signed a letter which outlined his performance results over the last three (3) years, 2011 to 2013 and his placement on a PIP. **See SUF No. 55**. Plaintiff admits that he received the document, that he read it, and that he understood its contents. **See SUF No. 56**. Plaintiff discussed the letter with his direct supervisor at the time, Virgen Mejías ("Mejías"). **See SUF No. 57**. Plaintiff admits that pursuant to the letter, the Company was counting on his cooperation to be able to obtain the required results and that he would be notified of future workshops and seminars that could help him meet his goals. **See SUF No. 58.** Plaintiff admits that at no point did he request to be given any particular seminars. **See SUF No. 59.** According to the PIP letter, Santana's performance evaluation scores during the past three (3) years were below than what was required, that is in 2011 he obtained a 2.05, in 2012 he obtained a 2.31, and in 2013 he obtained a 2.39. His performance score was expected to exceed 2.65. As such, his performance would be monitored monthly for a period of six (6) months. **See SUF No. 60.** He was forewarned that if he failed to comply with and successfully pass the PIP, it would entail further disciplinary actions, up to and including termination. **See SUF No. 61**.

On April 7, 2014, Virgen Mejías, Santana's direct supervisor, met with him to discuss the Utuado's Branch results of the first trimester of 2014. As a result of the branch's results, they also discussed Santana's poor performance and how he failed to comply with certain Company rules. **See SUF No. 62.** On April 28, 2014, Santana signed a letter confirming the meeting with his direct supervisor. **See SUF No. 63.** Furthermore, Santana's subpar performance in this regard

constituted a deviation from Rules 9, 27 and 29 of Santander Financial's Employee Manual and Rules of Conduct. **See SUF No. 64.**

In April 2014, Virgen Mejías also met with Santana to discuss his failure to comply with his attainment of goals for the month of March 2014 as required by the January 2014 PIP. **See SUF No. 65.** During the meeting, they discussed the fact that Santana had failed to comply with his attainment of goals for the month of March 2014 as required by the January 2014 PIP. **See SUF No. 66.** According to Santander Financial's monthly statistics, the Utuado's Branch scorecard results for the month of March 2014 reflected a poor performance, classifying it in the lowest 15% of the consumer network, since it obtained a result of 1.1. **See SUF No. 67.** The scorecard is a tool that measures the branch's sales and its uncollectible accounts. As such, the scorecard is used to evaluate a branch's performance. **See SUF No. 68.** On April 28, 2014, Santana signed a letter confirming the meeting with his supervisor, as well as his failure to comply with his objectives as Manager. **See SUF No. 69.**

During the month of June 2014, Virgen Mejías, Santana's supervisor met with him once again in order to discuss the fact that Santana had failed to comply with his attainment of goals for the month of April 2014, and that the Utuado Branch had obtained in its scorecard the lowest possible result of 1.0. As such, Santana once again failed to comply with the January 2014 PIP. **See SUF No. 70.** On June 2, 2014, Santana signed a letter confirming the meeting with his supervisor, as well as his failure to comply with his objectives as Manager during the month of April 2014, as required by the January 2014 PIP. **See SUF No. 71**. The letter also contained a summary of Santana's branch's scorecard results during the months of January, February and March of 2014, which reflected a poor performance since the scores for those months were 2.1, 1.3 and 1.1, respectively. **See SUF No. 72.**

In June 2014, Virgen Mejías met with Santana again to discuss the fact that Santana had failed to comply with his attainment of goals during the month of May, 2014, as required by the January 2014 PIP. **See SUF No. 73.** According to Santander Financial's monthly statistics, the Utuado's Branch scorecard results for the month of May 2014 reflected a poor performance, since it again obtained the lowest possible result of 1.0. **See SUF No. 74.** On June 30, 2014, Santana signed a letter confirming the meeting with his supervisor, as well as his failure to comply with his objectives as Manager during the month of May, 2014, as required by the January 2014 PIP. **See SUF No. 75.** According to Santander Financial's monthly statistics, the Utuado's Branch scorecard results for the month of June 2014 again reflected a poor performance, since it obtained a result of 2.5**. SUF No. 76.**

After evaluating Santana's performance evaluations during the past three (3) years (2011, 2012, and 2013), his performance for the first six (6) months of 2014 and his branch's scorecard results, the Company found that Santana had underperformed during the past three (3) years and had failed to comply with the attainment of goals established by the 2014 PIP. **See SUF No. 77.** Like all other Branch Managers, Santana was given all of the necessary tools, support, and personnel to achieve the established goals. **See SUF No. 87.** For example, like all other Branch Managers, Santana was provided with a Commercial School where Managers receive training regarding all aspects of the business; he was provided with sales training; meetings were held between the Managers, their supervisors, and branch employees; credit bureau campaigns were done; promotional flyers were provided to be used by the branches in order to promote loans, sales, and mortgage campaigns, among other things. **See SUF No. 88**. Despite this, Plaintiff failed to comply. On August 8, 2014, Santana was dismissed from his employment with Santander Financial. **See SUF No. 83.**

### E.     SANTANDER FINANCIAL ALSO EVALUATED THE PERFORMANCE OF ALL OTHER BRANCH MANAGERS SIMILARLY SITUATED

At the same time Santana's performance was evaluated, the Company also evaluated the performance of all other managers who were similarly situated to Santana's performance.  That is, all those managers that had failed to comply with their expected performance for the past three (3) years and whose branches had obtained a low scorecard results. **See SUF No. 78**. In addition to Santana, there was one (1) other Branch Manager, Grisel Velasco Pacheco ("Velasco"), that was similarly situated. **See SUF No. 79-80.** Like Santana, Velasco had a poor performance during the previous three (3) years, was placed in a PIP in 2014, had failed to comply with the goals established in the PIP, and was terminated on August 8, 2014. At the time of her termination, Velasco was 41 years of age. **See SUF Nos. 80, 84.** There was another Branch Manager, Rosalinda Ortiz Gyuzman ("Ortiz") that like Santana and Velasco, had failed to comply with the expected performance during the year 2013 **See SUF No. 81.**  As such, like Santana and Velasco, Ortiz was placed on a PIP in 2014. Nonetheless, after May 2014 Ortiz left of medical leave and never returned. At that time, Ortiz was 43 years of age. **See SUF No. 82.**

On August 8, 2014, Plaintiff met with Human Resources Deputy Director Manuel Frías and Virgen Mejías (who at the time was no longer Plaintiff's direct supervisor). During the meeting, Frías notified Santana of his employment termination. **See SUF Nos. 83, 85.** During the meeting Santana received and signed a termination letter, which stated that Santana's dismissal was due to his poor performance, failure to meet the efficiency and productivity requirements of his position, and his failure to comply with the goals established by the 2014 PIP. **See SUF No. 86**.

**F.    UTUADO'S    BRANCH    PERFORMANCE    AFTER    PLAINTIFF'S
TERMINATION**

After Santana's termination, Marianela Matos ("Matos") was promoted to Branch

Manager and transferred to Island Finance's Utuado Branch. **See SUF No. 89.** After her

promotion, Matos was able to consistently achieve and exceed the business goals established for

the Utuado Branch with essentially the same personnel Santana had under his supervision at the

time of his termination. **See SUF No. 90.** During the first fourteen (14) months of Matos'

transfer, the Utuado Branch recovered $600,000.00 of the $935,000.00 that had been lost by the

branch, in customer portfolio, during the last twenty two (22) months prior to Santana's

termination. **See SUF No. 91**.

### III.    STANDARD OF REVIEW

Summary judgment should be entered whereas here, there is no genuine issue of material

fact and judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56(c).  Serapión v. Martínez,

119 F.3d 982, 986 (1st Cir. 1997), cert. denied 522 U.S. 1047 (1998).  Its role is to pierce the

boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is

required.  Wyne v. Tufts University, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied 507 U.S.

1030 (1993). The device allows courts and litigants to avoid full - blown trials in unwinnable

cases, thus conserving the parties' time and money and permitting courts to husband scarce

judicial resources.  McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995); Hidalgo v.

Overseas Condado Ins. Services, Inc., 929 F.Supp. 555, 558 (D.P.R. 1996), aff'd 120 F.3d 328,

331 (1st Cir. 1997).  It is available to dispose of employment discrimination actions like the one

at bar.  Fóntanez-Núñez v. Janssen Orthon, LLC,, 447 F.3d 50, 55 (2006); Pomales v. Celulares

Telefonica, Inc., 447 F.3d 79, 83-84 (1st Cir. 2006); Lee-Crespo v. Schering-Plough Del Caribe,

Inc., 354 F.3d 34, 44 (1st Cir. 2003).

# IV.    DISCUSSION AND ANALYSIS

## A.    AGE DISCRIMINATION CLAIM

### 1.   Age Based Discriminatory Termination Claim Fails as a Matter of Law

Plaintiff alleges that he was terminated because of his age, in short, because (1) he was not provided with any support from his superiors in order to help him improve his branch's results; (2) his superiors took away key employees from his branch and failed to provide him with adequate employees in order to improve the branch's results; and (3) that he was not provided with the full six (6) month period provided by the improvement plan in order to improve his performance prior to his termination.   Notwithstanding Plaintiff's claims, the uncontested facts clearly show that Plaintiff's age was not the but-for cause of his employment termination. **See SUF No. 28-88**.

The ADEA prohibits an employer from discharging or "otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his age." 29 U.S.C. § 623(a)(1). However, an employee who claims that he was discriminated against in violation of the ADEA "must shoulder the ultimate burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired **but for** his age." Torrech–Hernandez v. Gen. Elec. Co., 519 F.3d 41, 48 (1st Cir. 2008) (internal quotations omitted and emphasis added) (quoting Ernesto Dávila v. Corporación de Puerto Rico para la Difusion Publica, 498 F.3d 9, 15 (1st Cir. 2007) and Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991)); Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 446 (1st Cir. 2009) ("As the Supreme Court recently clarified, plaintiffs must establish that age was the 'but-for' cause of the employer's adverse action.") (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009) (internal quotations omitted)).

In the instant case there is no direct evidence of discrimination. As such, the plaintiff has the option of proving his case through a burden shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–805 (1973). See also Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014) (applying the McDonnell Douglas burden shifting framework in an ADEA case). Pursuant to the burden shifting framework, the plaintiff has the burden to establish a *prima facie* case of discrimination. See Id.

In a termination claim, in order to satisfy this burden the plaintiff must produce evidence that shows that: (i) at the time he was fired, he was a member of the class protected by the ADEA ("individuals who are at least 40 years of age," 29 U.S.C. § 631(a)), (ii) he was otherwise qualified for the position of Manager, (iii) he was discharged by defendants, and (iv) defendants successively hired a person outside the protected class to fill plaintiff's position. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142–43 (2000). Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant-employer "'to articulate a legitimate, nondiscriminatory basis for its adverse employment action.'" Guillen-Gonzalez v. JC Penney Corp., 731 F.Supp.2d at 227-228 (quoting Torrech–Hernandez, 519 F.3d at 48.) However, "[t]he employer need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive." Id.

> Once the employer satisfies its burden of production, the presumption attending the prima facie case vanishes and the burden shifts back to the employee who must then show by a preponderance of the evidence that the reason given by the employer for the discharge is merely a pretext and that the real motivation for the adverse job action was age discrimination.

Id. at 228 (citing Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) and Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002)).

> **i.   Plaintiff was provided reasonable opportunity and all of the necessary tools to comply with his established performance goals**

Plaintiff's allegation that, he was not provided with any support from his superiors, the required tools or the necessary key employees because Defendants wanted to set him up for failure in order to replace him with a younger employee, is groundless, ludicrous, and unsubstantiated. First, Banks are in the business of making money not losing money and setting its employees up to fail would evidently cause it to lose money. Hence, Plaintiff's contention that Santander Financial set him up to fail is nothing short than absurd. Second, not only does Plaintiff fail to provide any evidence to show that he was not provided with any support from his superiors, that he was not provided with the required tools or the necessary key employees in order to help him comply with the established goals but the uncontested facts prove otherwise. **See SUF Nos. 87-88**.

Second, the uncontested facts clearly show that Plaintiff, like all other Branch Managers was given all of the necessary tools, support, and personnel to achieve the established goals, he simply did not use the provided tools, nor provide his employees with the necessary monitoring and/or support. **See SUF Nos. 15-16, 87-88.** Santana was provided with a Commercial School where Managers receive training regarding all aspects of the business; he was provided with sales training; meetings were held between the Managers, their supervisors, and branch employees; credit bureau campaigns were done; promotional flyers were provided to be used by the branches in order to promote loans, sales, and mortgage campaigns, among other things. **See SUF No. 88**.

This is much more evident, since Matos, who was promoted to Branch Manager and transferred to Island Finance's Utuado Branch after Plaintiff's termination, was able to consistently achieve and exceed the business goals established for the Utuado Branch with

essentially the same personnel Santana had under his supervision prior to and at the time of his

termination. **See SUF Nos. 89-90.** That is, during the first fourteen (14) months of Matos'

transfer, the Utuado Branch recovered $600,000.00 of the $935,000.00 that had been lost by the

branch, in customer portfolio, during the last twenty two (22) months prior to Santana's

termination. **See SUF Nos. 91.**

Plaintiff further contends that he was not provided reasonable opportunity to comply with

the established goals nor was he granted the full six (6) months period to improve his branch's

results, that is from April 4 to October 4, 2014, is unfounded and illogical. **See Complaint,**

**Docket No. 1, ¶ 31**. At the outset, we must clarify that nowhere in the letter received and signed

by Santana on April 4, 2014, does it state that the PIP commenced on a particular date and ended

on a particular date. Nor does is state that Santana had until October 2014 to improve his

branch's results prior to considering his termination. **See SUF Nos. 55-61.**

The uncontested facts clearly show that Santana discussed his performance with

Santander Financial's officials during the month of January, 2014, that he was warned of his

repeated failure to meet the goals established by Santander Financial during the prior three (3)

years, that he would be monitored during the following six (6) months and that if his poor

performance continued, he would be subject to disciplinary actions, including termination. **See**

**Manuel A. Frías Díaz's Deposition Transcript (hereinafter referred to as "Frías'**

**Deposition), attached as Exhibit C of SUF, p. 17, 29-30, 110**. This discussion was reiterated in

the letter signed by Santana outlining his PIP. **See SUF No. 55; see also Frías Deposition,**

**Exhibit C of SUF, p. 110**. Hence, Plaintiff was provided with much more than six (6) months in

order to improve his performance.

Nonetheless, for argument purposes we note that the period of the PIP ran from January to June, 2014, which is the period utilized by Santander Financial to conduct mid-year evaluations of its employees' performance. **See Frías Deposition, Exhibit C of SUF, p. 110**. Santana was plainly aware of this fact since he held a meeting specifically to discuss his attainment of goals for the month March, 2014 with his supervisor, as well as another meeting to discuss his attainment of goals for the month of April, 2014, where his performance for the months of January through March, 2014, were also discussed. **See SUF Nos. 53-76**. Santana signed letters outlining these discussions and giving him additional written notice of the period for which he was being evaluated, without any objection or comments regarding the same, making it implausible to find that throughout the entire PIP process, he did not know he was being evaluated for periods prior to April, 2014. **See SUF Nos. 53-76.**

Likewise, Plaintiff's contention completely ignores his performance results for the months of January, February and March, and under his view, these months would account for nothing in the evaluation of his termination, even though he failed to comply with his established goals during this period. Such result would be unreasonable and constitute a disparate treatment in Santana's favor, thereby unduly benefitting Santana over other Branch Managers who had to comply with their established performance goals during the aforementioned months in order to avoid being subjected to placement in a PIP or disciplinary actions taken against them.

In light of the above, it is evident that Santana was afforded with the necessary tools, support, and personnel to reach and even surpass the established goals. It is further evident that Santana was provided with sufficient notice of his poor performance and ample time to improve, but he failed to do so.

### ii. Plaintiff was not guaranteed continued employment until the expiration of his Performance Improvement Plan

In the Complaint, Plaintiff's main allegation of wrongful termination and age discrimination consists in that Santander Financial opted to terminate Santana's employment prior to the conclusion of the 6-month period of his PIP. **See Docket No. 1, ¶¶ 46-50**. As discussed above, Santana had shown a poor performance for three (3) consecutive years, failing to reach his established goals, he had been previously placed in PIPs, and upon being placed again in a PIP in 2014, his performance was evaluated for the first six (6) months of the year, during which he failed once again to comply with his established goals. **See SUF Nos. 28--76**. This and only this, was the result of his termination. However, even assuming arguendo that the PIP provided that "[p]laintiff had until approximately October 4, 2014 to improve his branch's results," this matter is irrelevant to the determination that Plaintiff's employment termination was wrongful, much less discriminatory.

The PIP specifically states that Santana's performance would be monitored __monthly__ for a period of six (6) months and failing to comply with the PIP would entail disciplinary actions, including termination. **See SUF No. 53-60**. As shown, Plaintiff failed to comply with his monthly performance goals every month from January to June, 2014. **See SUF No. 53-77.** Although Plaintiff insinuates that the PIP "guaranteed" him six (6) months of employment to improve his performance, the PIP contains no such guarantees. Pierce v. Office Depot, Inc., Civil No. 13-3601 (MGL), 2014 WL 6473630, *8 (D.S.C. Nov. 18, 2014). Plaintiff's proposition overlooks the fact that the PIP included intermediate monthly deadlines that Plaintiff failed to meet. Furthermore, by failing to meet his performance goals for the months April, May, and June 2014, Plaintiff could not have fully complied with the PIP even if he had subsequently satisfied his goals for the months of July, August, and September. Zakharevskaia v. Online Computer

Library Ctr., Inc., 11 Wage & Hour Cas. 2d (BNA) 1156, 2006 WL 1401666, *6 (S.D. Ohio May 22, 2006).

Moreover, a pretext contention requires the court to look at the facts as they would appear to the person making the decision to terminate Plaintiff. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir. 2000) (citing Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1209 (10th Cir. 1999), for the proposition that it is the manager's perception of the employee's performance, and not the employee's subjective evaluation of his performance, that is relevant in determining pretext). In the present case, it is undisputed that Plaintiff's production numbers for the branch he managed were below the performance goals established by Santander Financial at the time of his termination and had been below such goals for **over three (3) years**. **See SUF Nos. 28-77**. Plaintiff's placement in a PIP and his branch's failure to comply with the established performance goals for the first six (6) months of 2014 is also undisputed. **See SUF Nos. 53-77.**

Consequently, the contention that Santander Financial did not allow Plaintiff to complete the PIP does not raise a genuine issue of material fact that Santander Financial's reason for termination is unworthy of credence and that the real and only reason for his termination was age discrimination. The burden to establish pretext cannot be met merely by refuting or questioning the articulated legitimate reason or by contesting the objective veracity of defendant's actions. Morgan, 901 F. 2d at 191. The pretext analysis is more demanding and moves the inquiry to a new level of specificity. Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003). Thus, Plaintiff is required to "'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real [and unlawful] motive . . .'" Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 452 (1st Cir.2009). Mere denial of wrong doing is not enough to overcome summary disposition. Azimi v. Jordan's Meats, Inc.,

456 F.3d 228, 246 (1st Cir.2006).  "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." LeMaire v. Louisiana Department of Transportation and Development, 480 F. 3d 383, 398 (5th Cir. 2007); L. Caskey v. Colgate-Palmolive Company, 535 F. 3d 585, 592 (7th Cir. 2008) ("Hill's stated reasons for placing Caskey on DML-that she committed unsafe behavior and produced defective product-were sufficiently nondiscriminatory. Nothing in the record supports a finding that these reasons were fabrications, Caskey's bald statement that this was a "lie" notwithstanding. Without such evidence, summary judgment is appropriate"); Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir.2005) (Grant of summary judgment was affirmed on the basis that Plaintiff only relied in his own unsubstantiated and contradictory testimony, which lacked any corroborating evidence in the record.).

### 2.  Aged Based Hostile Work Environment Claim

From Plaintiff's allegations it is not clear whether Plaintiff alleges a claim of hostile work environment. Since such claim is not properly plead pursuant to the requirements of the Federal Rules of Civil Procedure, Plaintiff is not entitled to relief. However, assuming for the sake of argument that Plaintiff has brought forth this type of claim, even when viewed in the light most favorable to him, the alleged hostile work environment is neither severe nor pervasive. See Moore v. Abbott Labs., 780 F.Supp.2d 600, 633 (S.D. Ohio 2011) (citing Clay v. United Parcel Serv., Inc., 501 F.3d 695, 707–08 (6th Cir.2007) (finding fifteen incidents in two-year period did not demonstrate pervasive harassment)).

To prevail on a claim of age related hostile work environment, a plaintiff must show that the employer subjected him to intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of his employment and created a subjectively and objectively abusive

working environment. See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 115-116 (2002); Harris v. Forklift, 510 U.S. 17, 21 (1993); Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008); Douglas v. J.C. Penney Co., 474 F.3d 10, 15 (1st Cir. 2007)). For the reasons discussed in this section, Plaintiff's hostile work environment would also fail as a matter of law.

Whether the environment was sufficiently hostile or abusive is determined by looking at all of the circumstances, including the frequency of the allegedly discriminatory conduct; its severity; and whether it was physically threatening or humiliating, or a mere offensive utterance. Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998). "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id. See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998)); Thompson v. Coca-Cola Co., 522 F.3d 168, 180 (1st Cir. 2008); Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003). It should be noted that a similar test applies under Puerto Rico law.

In support of Santana's alleged hostile work environment, Plaintiff alleges that he was discriminated against by his superiors who allegedly made age based discriminatory comments and then allegedly started to give him disciplinary actions regarding his performance.

### i. Alleged Discriminatory Comments are not sufficiently severe or pervasive[3]

In support of Plaintiff's aged base hostile work environment, Santana alleges that his superiors allegedly made the following aged based discriminatory comments: (1) during a meeting held on May 16, 2013 with then Santander Financial President Molfino, he was asked to voluntary resign (5) times and Molfino said Santander Financial's Executive Committee "did not

---

[3] It is important to note that during his employment at Santander Financial, Plaintiff did not file a written or verbal complaint of any type of discrimination or harassment against any of his supervisors, that is, District Manager Virgen Mejías, General Director Jeannette Villamil, or President Freddy Molfino. **See SUF No. 19.**

see the Plaintiff with good eyes" (**Docket No. 1, pp. 17-21**); (2) on May 22, 2013, Santana

informed he would not resign and felt uncomfortable with Molfino's request (**Docket No. 1, p.**

**22**); (3) on June 5, 2013, Santander Financial's General Director Mrs. Villamil requested that

Plaintiff resign, to which Plaintiff repeated that he would not resign; Plaintiff contends that

Villamil then said in a "threatening and intimidating way"  that if he didn't make the numbers of

his branch, he would be terminated (**Docket No. 1, pp. 23-24**); (4) on June 7, 2013, during a

meeting with Santander Financial's managers, including Plaintiff, Villamil said: "you have been

seeing that we are bringing young people to work with us, we want young people that accept

changes, that go ahead, and that are not afraid" (**Docket No. 1, p. 55**); (5) on or about April,

2014, Santander Financial District Manager, Mejías told Plaintiff that she could not wait for Ms.

Lucy Torres ("Torres") to leave the Company and she asked Plaintiff "why doesn't that woman

leave the Company?" (**Docket No. 1, p. 56**).

It is black letter law that comments are evidence of discrimination under the ADEA only

if they are (1) related to the protected class of persons of which the plaintiff is a member, (2)

proximate in time to the complained-of adverse employment decision, (3) made by an individual

with authority over the employment decision at issue, and (4) related to the employment decision

at issue; comments that do not meet these criteria are considered "stray remarks," and standing

alone, are insufficient to defeat summary judgment. Jackson v. Cal-W. Packaging Corp., 602

F.3d 374, 380 (5th Cir. 2010).

### a.        *Molfino*

With regard to the comments allegedly made by Molfino, assuming *arguendo* they took

place on the date indicated by Plaintiff in his Complaint, these comments plainly fail to comply

with the requirements indicated above. First, there is no evidence to show these alleged

comments related in any way to Plaintiff's age. There is nothing in the phrase "did not see Plaintiff with good eyes" that refers to age. "If anything, it is a profoundly ambiguous remark that is much too innocuous to transform routine managerial decisions into something more invidious." Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 75 (1st Cir. 2011) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 56 (1st Cir.2000)) (internal quotations omitted).

Also, according to Plaintiff, these comments were made over six (6) months before his placement in the PIP, over one (1) year prior to his termination, and were made by Molfino, who ceased to work for Santander Financial in July, 2013.  **See Fredy Molfino Campodónico's Deposition Transcript ("Molfino's Deposition"), attached as Exhibit D of SUF, pp. 31-32, 35-36, 63-64.** "Temporal proximity between the remarks and the ensuing employment action speak to the reasonableness of an inference that a causal relationship existed between the remarks and the decision made. Moreover, the comments must unambiguously evince an age-based animus, such that they are not reasonably susceptible to a benign connotation." Torres-Alman v. Verizon Wireless Puerto Rico, Inc., 522 F. Supp. 2d 367, 391 (D.P.R. 2007) (citing Vesprini v. Shaw Contract Flooring Services, Inc., 315 F.3d 37, 41–42 (1st Cir. 2002).

In the case at issue, the alleged comments by Molfino are far too removed in time from the adverse employment action in question to reasonably indicate any discriminatory animus whatsoever and were made by a person who had no involvement in Plaintiff's termination. **See Molfino's Deposition, Exhibit D of SUF, pp. 31-32, 35-36, 63-64**; see also Lewis v. Gillette Co., 22 F.3d 22, 25, (1st Cir. 1994) ("[T]here must be something more than a few weak inferences to create reasonable proof of a link between events so widely separated in time."); Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002) ("'[S]tray workplace remarks,' as well as statements made either by nondecisionmakers or by decisionmakers not involved in the

decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus.").[4]

Furthermore, Plaintiff's allegation that he informed he would not resign and felt uncomfortable with Molfino's request is contradictory to an e-mail he sent to a Santander Financial Human Resources official the day prior to said event, in which Plaintiff expressly requested to be evaluated for a voluntary resignation from Santander Financial ("Según conversación telefónica; por este medio solicito la alternativa de ser evaluado para una salida voluntaria."). **See Exhibit 8 of Plaintiff's Deposition, (Email to Marilyn Guzmán Díaz from Antonio Santana Vargas re: Evaluation, sent on May 21, 2013) attached as Exhibit B-13 of SUF.** In this regard, "[w]hile it is true that, in the summary judgment context, a district court must draw all reasonable inferences in favor of the non-moving party, it is not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party." Amira-Jabbar v. Travel Servs., Inc., 726 F.Supp.2d 77, 92 (D.P.R. 2010) (quoting Méndez–Aponte v. Puerto Rico, 656 F.Supp.2d 277, 281 (D.P.R.2009) (internal citations omitted). It does not follow that Plaintiff would feel uncomfortable, much less discriminated, by an alleged request to resign if he personally requested to be evaluated for such action in the normal course of business. Therefore, this Court cannot draw any reasonable inferences in Plaintiff's favor from such contradictory assertion. Moreover, as indicated above, Molfino's alleged request for Plaintiff's resignation

---

[4] It is worth noting that the person in charge of Plaintiff's evaluation and termination process, Manuel A. Frías Díaz, is much older than Plaintiff, at 60 years of age. **See Manuel A. Frías Díaz's Deposition Transcript (hereinafter referred to as "Frías' Deposition), attached as Exhibit C of SUF, p. 6; see also Exhibit A-2 of SUF (Evaluation and Recommendation of Disciplinary Action); Exhibit 14 of Plaintiff's Deposition Transcript (Letter of Dismissal to Antonio Santana Vargas), attached as Exhibit B-11 of SUF.**

does not refer to age at any point in time, nor can it be reasonably inferred that such request was due to Plaintiff's age.[5]

### b.      *Villamil*

Turning to Villamil's supposed request for Plaintiff to resign and after his refusal, she said that if he didn't make the numbers, he would be terminated, these comments also do not relate in any manner to age, nor can they be reasonably interpreted as ageist. Adverse treatment that is the result of the Plaintiff's work performance is not a violation of the ADEA. McLaughlin v. Principi, No. 1:05 CV 00203, 2006 WL 2850595, at *8 (M.D.N.C. Oct. 3, 2006) (Supervisor's comments such as "are we getting anything done today?"; "are ya' making your rounds?"; and "you need to catch up on your numbers" were unrelated to plaintiff's age.), aff'd, 220 F. App'x 194 (4th Cir. 2007). Contrary to Plaintiff's argument, these comments are clear evidence that the reason for his termination was his poor work performance and failure to comply with the established goals for his position, not his age. See Chamat v. Geithner, 381 F. App'x 728, 730 (9th Cir. 2010).

As for Villamil's alleged comment during a meeting held with Santander Financial's managers on June 7, 2013,[6] where she supposedly said that the Company was bringing young people to work and that they wanted young people that accepted change and that were not afraid, "[t]his comment, whether reviewed in the abstract or in the context of his case, simply cannot support a determination of age bias." Torres-Alman, 522 F. Supp. 2d at 392 (D.P.R. 2007) (quoting Fortier v. Ameritech Mobile Communications, 161 F.3d 1106 (7th Cir.1998); EEOC v.

---

[5] It is also contradictory that pursuant to Plaintiff's own allegations, in the same conversation that Molfino allegedly asked Plaintiff to resign, Molfino also stated that in exchange he would consider offering Plaintiff a new job position as Auditor. Furthermore, it seems that Plaintiff had an interest in the position because he asked Molfino for more information about the position. **See Complaint, Docket No. 1, at ¶¶ 19-20.**

[6] In the Complaint, Plaintiff failed to specify the date in which this event occurred, only stating "[o]n one occasion…." However, during his deposition, Plaintiff clarified his allegation regarding this event, stating that it had occurred in June 2013. **See Plaintiff's Deposition Transcript ("Plaintiff's Deposition"), attached as Exhibit B of SUF, pp. 88-89.**

<u>Clay Printing Co.</u>, 955 F.2d 936 (4th Cir.1992) (The statement "young blood" is not probative of age discrimination or of a discriminatory animus); <u>Gagne v. Northwestern Nat'l Ins. Co.</u>, 881 F.2d 309, 314 (6th Cir.1989) (The statement "younger blood" does not create a genuine issue of fact in age discrimination case). "[I]t has been noted that "[w]ords of praise of youth ... do not, by themselves, indicate a bias against more mature workers." <u>Id.</u> at 392-93 (quoting <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 825 (1st Cir. 1991); <u>Shager v. Upjohn Co.</u>, 913 F.2d 398, 400–02 (7th Cir.1990) (Superior's remark that "[i]t was refreshing to work with a young man with ... a wonderful outlook on life and on his job" not probative of age discrimination); <u>Merrick v. Farmers Ins. Group</u>, 892 F.2d 1434, 1438–39 (9th Cir.1990) (The court granted summary judgment for employer despite comment that Plaintiff's replacement was "a bright, intelligent, knowledgeable young man."). <u>See</u> Barbara T. Lindemann & David D. Kadue, <u>Age Discrimination in Employment Law</u> 9-22 (2nd ed. 2015) ("Generalized statements regarding the company's willingness to hire younger workers… are not usually evidence of discrimination – even when made by a decision maker.").

### c.      *Mejías*

Finally, in regard to Mejías' alleged comments that she couldn't wait for Torres to leave the Company, these are even less probative of a discriminatory intent towards Plaintiff. <u>See Kilhore v. Brookeland Indep. Sch. Dist.</u>, 538 F. App'x 473, 476 (5th Cir. 2013) (Decision maker's comment that plaintiff was "eligible for retirement" was not direct evidence of discrimination; statement "simply recognized a fact concerning" plaintiff's eligibility for benefits). Like the alleged comments by Molfino, these are too abstract and ambiguous to demonstrate age-based animus towards the subject of the comments ("Torres"), much less Plaintiff. Second, these comments, assuming they were said and inferring they are ageist, do not

refer to Plaintiff and are not directed at him, but with regard to another employee. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520-21 (4th Cir. 2006) (Comments that did not refer to the plaintiff and were not directed at him did not create an inference of illegal age discrimination under a pretext or mixed-motive approach). "Comments about another employee's age, removed from any context suggesting that they influenced decisions regarding [the plaintiff's] own employment, do not suffice to create a genuine issue of fact as to whether age was the but-for cause of [the plaintiff's] termination." Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2nd Cir. 2014).

From a cursory review of the alleged discriminatory comments and the applicable case law, it is evident that the conduct complained of is not so objectively offensive, abusive, severe or pervasive, physically threatening or humiliating, that it created a hostile work environment.[7]

Furthermore, these alleged comments are insufficient to establish a genuine issue of material fact as to pretext. In the case at bar, the uncontested facts clearly show that Santana was terminated due to his continued poor performance and failure to meet Santander Financial's established goals for his position as Manager over a span of more than three (3) years. **See SUF Nos. 20-73**. Without more, this Honorable Court simply cannot conclude that age played a role in the decision to terminate Santana much less that age discrimination was **the sole reason** for the adverse employment action.

---

[7] Villegas v. Universidad Interamericana, 2007 U.S. Dist. LEXIS 14615 (D.P.R. 2007)(Constantly referring to plaintiff as "anciana," "vieja," "abuela," and telling her that "she was too old and should retire" was too mild to form the basis of a hostile work environment claim); Meléndez Ortiz v. Wyeth Pharmaceutical Co., 775 F. Supp. 2d 349, 375 (D.P.R. 2011) (The Court rejected a hostile work environment claim based in part on allegations that plaintiff's supervisor called him "old man" and "old fart" on a daily basis.  It is plain that what Menéndez complains of is not so objectively offensive, abusive, severe or pervasive, physically threatening or humiliating that it created a hostile work environment.); Colón-Fontanez v. Municipality of San Juan, 660 F.3d 17, 44 (1st Cir. 2011). "[W]here a workplace objectively falls short of that "abusive" high-water-mark, it cannot sustain a hostile-work-environment claim").  "[T]he work place is not a cocoon, and those who labor in it are expected to have reasonably thick skins." Rosario v. Dep't of Army, 607 F.3d 241, 247 (1st Cir. 2010).

Motion for Summary Judgment…                                                        27
Civil No. 15-1521(JAG)

### 3.   Plaintiff's Disparate Treatment Claim Fails as a Matter of Law

Plaintiff's contention regarding the fact that although there were other branches of Island Finance which had worse performance than Santana's branch, but their managers were not terminated, is even more baseless and misleading. **See Docket No. 1, ¶ 45-48**. First, we emphasize that Plaintiff has failed to allege or bring forth any evidence to show that the managers of such branches with supposedly worse performance than him, were not part of Plaintiff's protected class under the ADEA. Second, Plaintiff specifically identified the Caparra Branch as an example of a branch with supposedly worse performance than Utuado.[8] What Plaintiff omitted from his allegation is that the Manager of the Island Finance Caparra Branch at the time of Santana's termination was Martha Marín Benítez, who is actually older than Santana. **See Exhibit A-9 of SUF (Manager's Table)**. Plaintiff also omitted that **<u>43 of the 55</u>** Island Finance Branch Managers at the time of his termination were members of the protected class under the ADEA, 11 of which were older than Plaintiff. **See Exhibit A-9 of SUF (Manager's Table).** Thus, Plaintiff's allegation of age discrimination based on disparate treatment of other Managers whose branches had worse performance simply crumbles.

Additionally, to arrive at this conclusion, Plaintiff only identified his branch's "production numbers" for the month of July, 2014. Nonetheless, his termination was not simply based on the production numbers for the month of July 2014. Plaintiff's termination was based on his failure to comply with his established goals for more than 3 and half years. **See SUF Nos. 28-77**. Furthermore, Plaintiff failed to address the production numbers achieved by other

---

[8] It is also important to note, that the Caparra branch cannot be used as a comparison. Island Finance's branches are classified into different types depending on the size of its financial portfolio. For example, at the time of Plaintiff's termination, the Utuado Branch was classified as a type C branch. This meant that its financial portfolio of active clients with approved and disbursed loans was less than $7 million. **See SUF No. 8**. The branches classified as type A branches have a considerably larger financial portfolio than type C branches. The branches classified as type A branches have a considerably larger financial portfolio than type C branches. At the time of Plaintiff's termination, the Caparra branch was classified as a type A. **See SUF No. 9.**

branches during the whole period evaluated prior to his termination (3 and a half years) or even

establish a causal connection between this comparison and his membership to the protected class.

In further contrast to Plaintiff's unfounded contention of disparate treatment, the

uncontested facts prove that at the same time Santana's performance was evaluated, the

Company also evaluated the performance of all other managers that had failed to comply with

their expected performance for the past three (3) years and whose branches had obtained low

scorecard results, thus being similarly situated to Santana.  See **SUF No. 78**. After evaluating

those managers, the Company found that the only Branch Manager similarly situated was Grisel

Velasco Pacheco ("Velasco"), who is younger Plaintiff. **See SUF No. 79-80, 84**. Like Santana,

Velasco had a poor performance during the previous three (3) years, was placed in a PIP in 2014

and upon failing to comply with such goals, was terminated on the same date as Santana. **See**

**SUF Nos. 80, 84**.

As such, this conclusory and imaginative allegation is clearly unfounded and lacks any

evidentiary support.

### 4.   No employment relationship existed between Banco Santander and Plaintiff

The present Complaint filed against Banco Santander fails to state a claim upon which

relief can be granted under any of the laws asserted in the Complaint, since Santana was not, and

has never been, an employee of Banco Santander. Furthermore, no employment relationship of

any kind has ever existed between Plaintiff and Banco Santander.

As clearly admitted in the instant Complaint, Banco Santander and Santander Financial

are two separate corporations that operate independently from one another. **See Docket No. 1,**

**pp. 3-4; see also SUF No. 92.** The reality that Banco Santander and Santander Financial are

distinct legal entities is further demonstrated by the fact that Plaintiff served both Banco

Santander and Santander Financial with summons separately and on different dates. **See Docket Nos. 6 and 7**. As part of the agreements between Santander Financial and Banco Santander, these entities established a regulation requiring a clear differentiation in the services provided by one company to the other, in order to ensure that each entity is able to self-sustain its business. **See SUF No. 93.** Santana worked at Island Finance, holding various job positions from July 30, 1986 to August 8, 2014, that is during all times relevant to this action. **See Docket No. 1, pp. 5, 13**; **See SUF Nos. 3, 6.**

However, Plaintiff fails to state any facts which properly show that Banco Santander was Santana's employer throughout any part of his tenure at Island Finance. Allegations that "Santander acquired Island Finance" and that "[u]pon the transfer of the going concern, Santander became a successor employer of Island Finance since it acquired an already existing operation and continued, without interruption of substantial change, the same business of the previous employer," referring collectively to all defendants in this case, are legal conclusions unsupported by factual allegations that are not entitled to the assumption of truth. **See Complaint, Docket No. 1, p. 5**. These allegations are made solely as an attempt to mislead this Honorable Court by regarding all separate defendants in the Complaint as one, in order to attribute liability to Banco Santander although it is nonexistent.

Nevertheless, nowhere in the Complaint does Plaintiff allege that he worked for Banco Santander at any point in time or that an employment relationship existed as to both parties. In contrast, Santana admits that after Santander Financial's acquisition of Island Finance, he received a letter only from Santander Financial (and not from Banco Santander) informing him that he was going to be an employee of Santander Financial, from March 1, 2006. **See SUF Nos. 95-99.** Santana was never employed by Banco Santander nor did he ever sign an employment

contract with Banco Santander. **See SUF Nos. 100-101**. Furthermore, Santana admits that during

his employment at Santander Financial, all of the paychecks he received for his work were paid

solely by Santander Financial. **See SUF No. 100, 102.** Considering the foregoing, the Complaint

filed before this Honorable Court fails to state a claim upon which relief can be granted

attributable to Banco Santander, as it was never Plaintiff's "employer." [9]

As stated above, where no employment relationship exists between Plaintiff and Banco

Santander, no liability can be ascribed to Banco Santander under any of the alleged federal or

state claims.

Consequently, the Complaint in its entirety must be dismissed against Banco Santander.

**B.      Supplemental State Law Claims Fail as a Matter of Law**

Plaintiff's state law claims, that is, those under Law No. 100 (discrimination statute)[10]

and Law No. 80 (unjust termination statute)[11], should be similarly dismissed, for they are

---

[9] As stated, "Section 623(a) of the ADEA imposes liability only on employers." Camacho v. Puerto Rico Ports Auth., 369 F.3d 570, 572 (1st Cir. 2004). "Although a defendant may technically fall within the ADEA definition of 'employer,' an aggrieved employee alleging discrimination must establish that an employee-employer relationship exists in order to successfully allege a claim under ADEA." E.E.O.C. v. Puerto Rico Job Corps, 729 F. Supp. 208, 217 (D.P.R. 1990). See Vicenty-Martell v. Estado Libre Asociado de Puerto Rico, 48 F. Supp. 2d 81, 87 (D.P.R. 1999). Therefore, "[a]bsent a covered employment relationship, ADEA liability does not attach." Camacho, 369 F.3d at 573. See Flamand v. Am. Int'l Grp., Inc., 876 F. Supp. 356, 363 (D.P.R. 1994) ("[O]nly the employee's employer may be liable under ADEA."). Under Law No. 100, the term "employer" is defined as "any natural or [juridical] person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or [juridical] person." P.R. Laws Ann. tit. 29, § 151. As with the ADEA, if an employer lacks a requisite employment relationship with the plaintiff bringing suit, no liability can be implied under Law No. 100. See Educadores Puertorriquenos v. Rey Hernandez, 508 F. Supp. 2d 164, 185 (D.P.R. 2007) ("[I]t is clear that this defendant was not plaintiffs' 'employer' and therefore, not subject to liability under this statute."). See also Marin-Piazza v. Aponte-Roque, 873 F.2d 432, 437 (1st Cir. 1989); Gomez Vazquez v. Diaz Colon, 91 F. Supp. 2d 481, 483 (D.P.R. 2000). Furthermore, Law No. 80 provides that a private sector employee contracted without a fixed term who is discharged without just cause shall be entitled to receive from "his employer" the exclusive remedy disposed therein, namely the severance pay. P.R. Laws Ann. tit. 29, § 185a. Although Law No. 80 does not define the term "employer", it does provide that the severance pay shall be calculated based on wages paid to the employee and the years of service at the time of his/her discharge. See Id. Accordingly, courts have concluded that since it is the employer who pays the employee's wages, only the employer may be liable for the wrongful discharge of the employee. See Flamand v. Am. Int'l Grp., Inc., 876 F. Supp. 356, 364-65 (D.P.R. 1994); Mandavilli v. Maldonado, 38 F. Supp. 2d 180, 205 (1999). Thus, as previously discussed, because Plaintiff has failed to allege facts that properly establish that he was an employee of Banco Santander, no liability can be imposed under Law No. 100 or Law No. 80, as set forth in the Complaint.

[10] Art. 1 of P.R. Law 100 particularly states:

premised on the same allegations, and are subject to the same analysis. Menzel v. Western Auto,
848 F.2d 327, 330-331 (1st Cir. 1988) (Summary judgment dismissing discrimination and unjust
discharge actions under Federal and Puerto Rico law); Landrau Romero v. Caribbean
Restaurants, Inc., 14 F.Supp.2d 185, 189 (D.P.R.1998) (Summary judgment dismissing
discrimination and hostile work environment claim under Federal and Puerto Rico law); Lee
Crespo v. Schering-Plough del Caribe, Inc., 354 F.3d 37 (1st Cir. 2003).

As evidenced by the uncontested facts, Plaintiff has no claim under Law No. 100 since he
was never discriminated against nor terminated because of his age. **See SUF Nos. 28-88**.
Moreover, as clearly demonstrated above, Plaintiff's termination was for just cause under Law
No. 80 as it was as a result of his continuous poor performance, his repeated failure to meet the
quality of service, his failure to comply with the business objectives that were established for his
position as Branch Manager, for failing to comply with the requirements of productivity for his
position and failing to comply with the goals established in the final PIP, in spite of being given
many opportunities to do so. **See SUF Nos. 28-88**.

The uncontested facts further show that Santander Financial applied progressive
disciplinary actions and gave notice to Plaintiff of the consequences of continuing to
underperform for several years prior to his termination. **See SUF Nos. 28-88.** However, Plaintiff

---

Any employer who discharges, lays off or discriminates against an employee
regarding his salary, wage, pay or remuneration, terms, rank, conditions, or
privileges of his work, or who fails or refuses to hire or rehire a person, or who
limits or classifies his employees in any manner which tends to deprive a person
of employment opportunities, or to affect his status as employee, on the basis of
age, as defined hereinafter, race, color, sex, social or national origin or social
position, political or religious beliefs of the employee or applicant for
employment:

(a)   shall incur civil liability. . .

[11] Article 2 of P.R. Law No. 80 lists, in its pertinent part, the following circumstances which constitute "just cause"
for dismissal: ". . .(c) repeated violation by the employee of the reasonable rules and regulations established for the
operation of the establishment, provided a written copy thereof has been timely furnished to the employee." P.R.
Laws Ann. tit. 29, §185b.

failed to improve his performance. **See SUF Nos. 28-88**. This constituted a repeated violation by

Plaintiff of the reasonable rules and regulations established for the operation of Santander

Financial which were provided to Plaintiff during his employment at Santander Financial and

which he admits was well aware of. **See SUF Nos. 28-88.** As such, Plaintiff's Law No. 100 and

Law No. 80 claims should suffer the same fate as his federal claim.

Furthermore, Plaintiff's claims under Articles 1802 and 1803 of the Puerto Rico Civil

Code fare no better, as those claims are premised on the same allegations, and face the same

insurmountable obstacles to liability posed by the employer's defenses under ADEA and local

employment statues. Menzel v. Western Auto, 848 F.2d at 330-331. Regarding claims asserted

under these statutes, courts have consistently held that inasmuch as an Article 1802 and 1803

claim is "based on the same facts that give rise to asserted causes of action under Puerto Rico's

special employment statutes—Laws 80 and 100—the former are superceded [sic] by the latter."

Reyes-Ortiz v. McConnell Valdes, 714 F.Supp.2d 234, 239 (D.P.R. 2010). See Rivera-Melendez

v. Pfizer Pharm., Inc., 747 F.Supp.2d 336, 339 (D.P.R. 2010).

Therefore, "as a general rule, in the face of conduct by an employer that has been typified

and penalized by special labor legislation, the employee only has recourse to the relief of said

Act, and is barred from seeking additional compensation under Article 1802 of the Civil Code."

Reyes-Ortiz, 747 F.Supp.2d at 339 (quoting Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1,

16, 1994 P.R.-Eng. 909, 527 (1994) (Hernandez-Denton, C.J., concurring)). "An additional claim

under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or

negligent conduct distinct from that covered by the specific labor law(s) invoked." Medina v.

Adecco, 561 F.Supp.2d 162, 176 (D.P.R. 2008) (quoting Rosario v. Valdes, Civ. No. 07-

1508CCC, 2008 WL 509204, at *2 (D.P.R. 2008)); <u>Vazquez Vazquez v. Checkpoint Sys. of Puerto Rico, Inc.</u>, 609 F.Supp.2d 217, 222 (D.P.R. 2009).

Similar to the plaintiffs in <u>Reyes-Ortiz</u> and <u>Medina</u>, Santana bases his Article 1802 and 1803 claims on the same conduct that supports his employment law claims, and alleges no independent tortious or negligent conduct. Accordingly, this Honorable Court must find Plaintiff's claims under Article 1802 and 1803 untenable and dismiss them with prejudice.

As to the claim brought under the Puerto Rico Bill of Rights, Plaintiff simply has made no effort to identify how this provision is applicable to any of his factual assertions, or in what way does he have a viable claim under this cause of action. Thus, any claim brought under it should be similarly dismissed. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." <u>Vargas-Colon v. Fundacion Damas, Inc.</u>, 864 F.3d 14, 24 (1st Cir. 2017) (quoting <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990)).

## V. CONCLUSION

In conclusion, it is uncontested that Plaintiff suffered no actionable age discrimination or age related hostile work environment.  The conduct he complains of simply does not reach the necessary threshold to sustain those claims nor does he show that his age was the but-for cause of the alleged negative actions.  For the reasons stated above, and there being no genuine issues of material fact, this Honorable Court should enter summary judgment dismissing all of Plaintiff's claims with prejudice.

**WHEREFORE**, Defendants respectfully request this Honorable Court to dismiss all of Plaintiff's claims against it with prejudice.

**RESEPCTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 30th day of October, 2017.

**WE HEREBY CERTIFY THAT** the undersigned counsel electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn will send notification of such filing to all attorneys of record.

> **O'NEILL & BORGES LLC**
> Attorneys for Defendants
> 250 Muñoz Rivera Ave., Suite 800
> San Juan, PR  00918-1813
> Tel. (787) 764-8181 / Fax (787) 753-8944
>
> By:      *s/ Carlos E. George-Iguina*
>          Carlos E. George-Iguina
>          USDC-PR No. 213213
>          carlos.george@oneillborges.com
>
> By:      *s/ Joanna B. Matos-Hicks*
>          Joanna B. Matos-Hicks
>          USDC-PR No. 227507
>          joanna.matos@oneillborges.com
>
> By:      *s/ Iván Santos-Castaldo*
>          Iván Santos-Castaldo
>          USDC-PR No. 302814
>          ivan.santos@oneillborges.com